**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

JAMES HAIR and CHRISTOPHER
WITKOWSKI, *Individually and on behalf of*
*all Others similarly situated,*

Plaintiffs,

Case No:

v.

GRANITE TELECOMMUNICATIONS, LLC,

Defendant.

---

**COLLECTIVE ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR
LABOR STANDARDS ACT**

---

Plaintiffs JAMES HAIR and CHRISTOPHER WITKOWSKI, individually, and on behalf of all others similarly situated who consent to their inclusion in a collective action, hereby file this Collective Action Complaint against Defendant:  GRANITE TELECOMMUNICATIONS, LLC (hereinafter Defendant or "Granite") pursuant to *29 U.S.C. 216(b)*, of the Fair Labor Standards Act (the "FLSA") and states as follows:

1.      Plaintiffs bring this action for violation of federal wage and hour laws by and on behalf of all similarly situated current and former employees of Defendants employed in the capacity as inside sales representatives working under the titles of Account Manager, Regional Account Manager, Sr. Account Manager, Industry Account Manager, National Account Manager, Sales Executive, or any other title used to describe the position of an inside sales representative selling to businesses.

1

2.      Pursuant to a common policy and scheme, the Plaintiffs and classes of similarly situated current and former employees have been given the titles from commencement as newly hired inside sales reps under the title of "Regional Account Manager", and then when deserving of promotion, given titles in the following order: "Sr. Account Manager", "Industry Account Manager", "National Account Manager", and then "Enterprise Account Manager".  All such titles were used to describe the exact same sales position, but each new title just brought the sales rep higher commission and base pay.   Some reps as well may have been labeled as "Regional Sales Executive", or titles or variations of these titles all used to describe an inside sales representative position, whose primary function was to sell, the Defendant's telecommunications and data services on a non-retail basis to businesses, professionals and commercial enterprises.    The Plaintiffs and the classes of similarly situated inside sales representatives were not compensated for overtime hours worked or paid a premium for all their overtime hours worked, and even when paid, were willfully and intentionally underpaid for all such hours.

3.      The FLSA requires employers to maintain daily and weekly, contemporaneous time records of the work hours of non-exempt employees.[1]

4.      Although the inside sales representatives working for Defendant were informed they were "salaried", it is unknown how the Defendant on paper or internally classified them.  The reality is that prior to February 2017, Defendant treated all inside sales representatives in all of its offices as exempt employees, not tracking their work

---

[1] *See* 29 C.F.R. §516

hours and not paying them a premium for overtime hours they knew its employees were working.  Thus, this case may be properly asserted as a case of Misclassification prior to February 2017, and after February 2017, a case of just willful underpayment and failure to pay.

5.      Defendant has improperly and willfully withheld and refused to pay Plaintiffs and all insides sales representatives overtime wages (a premium compensation) for all overtime hours worked over 40 in a work week  at the correct lawful rates.

6.      Defendant knew or should have known that these inside sales representatives fail the short test for the executive exemption since they do not supervise two or more full time employees, and their primary job duties are non-exempt sales duties and not management.  Inside sales representatives are on the production side of the business.

7.      Defendant knew or should have known that all of its inside sales representatives do not meet the administrative exemption, as their primary job duty does not in involve the use of discretion and independent judgment in matters of significance affecting the company and its management; and that their primary job duty is production and sales, typically non-exempt under the FLSA.

8.      Defendant knew or should have known that the inside sales representatives are clearly not outside sales representatives, and do not meet the § 7(i) exemption as well, clearly not selling retail or retail services and are selling to businesses.

9.      Defendant absolutely and unquestionably knew that their inside sales representatives were routinely working overtime hours, as managers and supervisors

witnessed the extra hours, encouraged and even pressured sales reps to work as many hours as possible to hit quotas and meet goals.

10.     Management never asked employees to leave after the shift ended, stopped them from working earlier, or warned or discipline employees working when they knew or should have known the the employees reached 40 hours in the work week.

11.     Defendant encouraged and pressurred all inside sales representatives to work overtime hours in order to meet goals and quotas and to maximize sales.

12.     Defendant also warned Plaintiffs and all other inside sales representatives against leaving at the end of the pre-set scheduled shift time as detrimental to their positions and future employment.

13.     Defendant has willfully failed to pay Plaintiffs and all similarly situated employees in accordance with the Fair Labor Standards Act (FLSA).  Specifically, Plaintiffs and similarly situated employees were not paid time and a half of their regular rate pay for all hours worked in excess of forty (40) hours per week, including the commissions in the calculation of the regular rate and overtime rates.  Plaintiffs and the class of similarly situated employees did not in the past, and currently do not perform work that meets the definition of any exemption under the FLSA, and the Defendant's pay practice and scheme to violate the FLSA are not only clearly unlawful, but UNFAIR as well.

14.     In this pleading, the term "Inside Sales Representative" means any employee of Defendant working under the variations of the titles of: "Account Executive",  "Account Manager", or any other title or position used by Defendant to

describe workers who perform substantially the same work as an inside sales representative selling Granite telecommunications' services from its multiple offices in the U.S. (discovery may reveal additional job titles and employees that should be included). Inside Sales representatives in this class make outbound phone (cold calls) calls, research the internet for leads, and either make internet presentations or demonstrations for the purpose of consummating sales of Defendant's telecommunications services.

15.   In this pleading, "Defendant" or "Granite" means the named Defendant and any other subsidiary or affiliated and wholly owned corporation, organization or entity responsible for the employment practices complained of herein, (discovery may reveal additional Defendants that should be included).

16.   The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiffs bear the burden of pleading, proof, or persuasion. Plaintiffs reserve all rights to plead in the alternative.

## THE PARTIES

### Representative Plaintiff, JAMES HAIR

17.   Jame Hair resides in this Wellington, West Palm Beach, Florida. He worked for the Defendant from approximately June 2015 through April January 2016 as an inside sales representative from the Defendant's West Palm Beach office last working under the title of "Regional Account Manager".

*REPRESENTATIVE PLAINTIFF CHRISTOPHER WITKOWSKI*

18.     Christopher Witkowski resides in Delray Beach, Florida.  He worked for Defendant in its West Palm Beach office as an inside sales representative under the title of Regional Account Manager during approximately July 2016 through May 2017.

19.     When initially hired, Hair and Witkowski were lead to believe the position was a 40 hour per week job, and that they were being paid a salary and treated as salaried employees exempt employees.

20.      Defendant also intentionally and falsely mislead Plaintiffs and all other inside sales reps during the relevant class period up through February 2017, into believing that because they were being paid a salary that they were not entitled to overtime pay.

21.     Defendant made it clear to Plaintiffs that they did not pay sales representatives overtime wages prior to about February 2017.

22.     Plaintiffs were sent for a week training in the Defendant's main office in Quincy, Massachusetts with a group or wave of other newly hired inside sales representatives who were to work in the various offices operated by Defendant, including:  Quincy, Philadelphia, New York, Lincoln, Dallas, Chicago, Atlanta, and Orlando.

23.      Plaintiffs returned for a second week of training again with the wave or group of newly hired inside sales representatives.  Defendant calls is structured, formalized training program "Granite University". WWW.GRANITENET.COM/GRANITEUNIVERSITY.

24.     Plaintiffs were employees of Defendant during their time as contemplated by 29 U.S.C. § 203.

25.     Both Hair's and Witkowski's primary job duty was to solicit businesses from the offices of Defendant selling Granite telecommunications services (telephone and data) to business and commercial enterprises by direct telephone and email solicitations, including its voice, data, mobile and network plans.

26.     Hair and Witkowski and all other inside sales reps were paid a base salary and provided a monthly commission plan which would pay Plaintiff a commission if they met a sales goal or quota on a percentage of goal commission plan, but the failure to meet the minimum goal would negate any commission earnings.

27.     The base salary and commission plan was a standardized pay structure or plan applicable to all sales representatives in the Defendant's many offices, except that each level or new title of account manager brought higher pay and commissions.

28.     All inside sales representatives of Granite were paid pursuant to the same common pay plan:   a base salary quoted to the employees in an annual sum, and eligibility for monthly bonuses or commissions on a sliding scale, percentage of goal commission payout depending upon reaching the maximum target goal of 100%, and decreasing as the production fell below 100% of the goals.

29.     All inside sales representatives were not automatically paid any overtime when they worked over 40 hours in a work week, even when according to the phone log in system or other programs such as Sales Force management had knowledge employees exceeded 40 hours in a work week.  Said differently, Defendant, up through the date of

7

Witkowski's last month of employment in May 2017, even though then offering to pay half time or some flat sum for overtime, continued to willfully violate the FLSA by not tracking their work hours and automatically paying overtime wages at the lawful required sums when they knew or should have known sales reps, including Witkowski were working over 40 hours in a work week.

30.     Hair and Witkowski routinely attended meetings with other inside sales reps, and from his training, company materials and communications with superiors and management came to understand that the company policies and procedures, including the lack of overtime pay was the same for all inside sales representatives.

31.     Plaintiffs were required to review webinars or routine training materials for on going training, which Defendant indicated was for all inside sales representatives, regardless of the office location and to ensure that all inside sales representatives were performing the jobs in similar manners.

32.     Hair, Witkowski and all other similarly situated employees are currently now or have previously been covered as employees under FLSA §207.

***The Defendant***

33.     Granite Telecommunications LLC is a foreign Corporation with principal place located at 100 Newport Avenue, Ext., Quincy, MA 02171.   Defendant may be served through its registered agent:   Corp. Creations Network Inc., 11380 Prosperity Farms Road, #221E, Palm Beach Gardens, FL 33410.

34.     Upon information and belief and analysis of Defendant's website and

8

postings for positions available for sales representatives, Defendant's staffs inside sales representatives at its offices in the following cities:  Quincy, MA; Philadelphia, PA; Orlando and West Palm Beach, FL; New York, NY; Lincoln, RI; Dallas, TX; Chicago, ILL; Atlanta, GA.

35.     Defendant's website indicates it hires account managers to perform the same job duties and responsibilities with a single job description for all inside sales representatives, and has employees attend in class-room type settings its "Granite University".   Similarly, for each variation in the job title such as National Account Manager, the job description is the same for all its offices.

36.     Defendant presently has posted the identical job description for the position of "Regional Account Manager" for  its offices in:  New York, West Palm Beach, Quincy, Orlando, Lincoln, and Atlanta on its website, confirming that there is a single job description for the Regional Account Manager for each office.

37.     Similarly, Defendant presently has posted the job idential job description for the position of "National Account Manager" for its Atlanta, Dallas and Chicago offices confirming a single job description for this position regardless of the office location.

38.     As stated by Defendant its business services are:   "We provide one-stop solutions for voice, data, Internet, wireless, video and secure network options."

39.      Granite is an Employer within the definition of the FLSA, and an Enterprise, and was Plaintiff's Employer within the meaning 29 U.S.C. § 203(d).  Upon information and belief, Defendant had revenues exceeding $500,000 annually in all

applicable time periods, and is involved in interstate commerce, making sales and collecting payments and credit card transactions across state lines and even across country lines into Canada from its various offices.

40.     Upon information and belief, at peak times within the preceding 3 years of the filing of this complaint, Defendant employed in its various offices in the U.S. upwards of 600 or more inside sales representatives, including 100 in West Palm Beach office alone.

41.     Given turnover, Plaintiffs estimate that the putative class of similarly situated inside sales representatives to be in the range of 1200 to 1500 persons or more.

## JURISDICTION AND VENUE

42.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, because this action involves a federal questions under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216 (b).

43.     This Court is empowered to issue a declaratory judgment under 28 U.S.C.§§ 2201 and 2202.

44.     This Court has personal jurisdiction over the Defendant, because the Defendant operates substantial and continual business in West Palm Beach, Florida and the damages at issue occurred within this District.

45.     Defendant Venue is proper to this Court pursuant to 28 U.S.C. Sec. 1391(b) because the parties reside in this district and because a substantial part of the events giving rise to the claims occurred in this District.

46.     The overtime wage provisions set forth in FLSA §207 apply to

Defendant, and at all relevant times, Defendant engaged in interstate commerce and/or in the production of goods for commerce within the meaning of FLSA Sec. 203 as a common business enterprise.

## GENERAL FACTUAL COLLECTIVE ALLEGATIONS

47.     This collective action arises from an ongoing, long standing, wrongful scheme by Defendant to willfully underpay and refuse to pay overtime wages to a large class of workers, the inside sales representatives, who Defendant knew, and knows still up through the filing of this complaint, routinely worked overtime hours without being paid properly under the FLSA.

48.     Defendant's unlawful pay practices and scheme applicable to all inside sales representatives includes: a) willfully misclassifying all inside sales representatives as EXEMPT under the FLSA or simply just willfully refusing to pay overtime wages to the class of inside sales reps, and b) underpaying all inside sales reps the lawfully required overtime rates both of which were designed to save many, many millions of dollars in labor costs and decrease expenses, all to the detriment of its inside sales representatives.

49.     Defendant has made a calculated, willful decision to refuse to pay overtime wages at the correct and lawful rates under the risk that even if one employee, or many eventually, made a claim for overtime wages, they would have already benefited financially from the additional work hours in terms of increased sales, and the fact that the statute of limitations would run on claims before many would even assert their rights

11

under the FLSA.

50.     Despite being a large, national and international, company with thousands of employees throughout the United State of America, including assumed general counsel or attorneys in their employment, and having operated in the US and subject to the requirements of the FLSA for perhaps decades, Defendant has blatantly, and willfully violated the FLSA by:  a) failing to institute an actual time tracking and recording system (at least one designated and designed for this purpose) and to which employees could access and see the hours worked; and more importantly, by b) willfully misclassifying inside sales representatives as exempt from overtime wages; or alternatively by: c) willfully refusing to pay overtime wages when they knew and were aware of employees working overtime hours and understood the FLSA requirements that employers must legally pay non-exempt employees, such as Plaintiffs and the class of similarly situated, a premium for all overtime hours worked.

51.     The FLSA does not require non-exempt employees to have to "claim" or submit a claim for overtime hours as a condition for being paid for these hours, especially where the Defendant knew, or should have known, that employees were working overtime hours who were non-exempt.

52.     In other words, when Defendant admittedly treated all inside sales reps on or about February, 2017 as non-exempt, whether paid on a salary or hourly base pay plan, Defendant was required by the FLSA to both track and record all time worked of these employees as well as to automatically pay the overtime hours they knew or should have known were incurred; but Defendant did not do either.

53.     Defendant commenced with paying overtime wages to some inside sales representatives on or about February 2017, but not to all, and not automatically.

54.     Defendant, upon information and belief, however paid overtime hours at rates of $8 to $10 per hour, (either some flat rate or some attempt at half-time rates) but failed to include commissions in the overtime rates and the regular rates of pay and did not pay time and one half of the regular rates of pay; thus Defendant willfully underpaid such employees and willfully violated the FLSA.

55.     Further, Defendant intentionally and willfully never inquired or investigated the past overtime hours worked by all inside sales representatives prior to the February 2017 new policy, never offered to pay them for all the prior overtime hours worked, and never explained to the inside sales representatives that they were legally entitled to be paid for all prior hours even when they knew they were entitled and non-exempt.

56.     Defendant never explained the laws to the employees even after February 2017 and why they would not be paid time and one half of their regular rates of pay or what the regular rate of pay was and how to calculate it with commissions included.

57.     Defendant maintained a practice of confusion, mis-information, and discouraged inside sales reps from questioning or challenging their practices under an environment of fear of scrutiny and reprisal and intimidation.

58.     Defendant never disciplined employees for working overtime hours during all relevant time periods, and never properly instituted a system to track and record the work hours of the inside sales representatives as required by the FLSA.     Upon

information and belief, Defendant still has not instituted a proper time tracking system as required by the FLSA.

59.     Defendant mislead Plaintiff and the class of similarly situated into believing they were exempt or not entitled to be paid overtime wages when they were hired and maintained this false and misleading policies and communications as a means to prevent inside sales representatives from making claims under the FLSA.

60.     Defendant maintained the unlawful pay practices of not tracking the work hours of the inside sales reps throughout the relevant three (3) years prior to Witkowski's last date of Employment in May 2017, and upon information and belief, has continued the this unlawful and improper practice as a means to save millions in dollars in labor costs and deter sales reps from claiming their overtime wages for fear of scrutiny, reprisal, retaliation including termination of their employment.

61.     Defendant maintained a De Facto policy against paying overtime wages and prior to February 2017, willfully attempted to prevent and foreclose all discussions or communications about overtime laws and overtime pay.  After February 2017, Defendant maintained a similar De Facto policy for all inside sales reps to work their hours and not claim overtime hours as doing so would bring scrutiny over your performance and questions over the accuracy of the hours claimed.

**THE PUTATIVE CLASSES**

62.     Plaintiffs bring this suit individually, and on behalf of all similarly situated persons composed of the following Class members:

**CLASS A:**

> **All persons employed by Granite Telecommunications LLC in the past three (3) years up through February 2017, anywhere in the U.S. as an inside sales representative under the titles of: Regional Account Manager, Senior Account Manager, Industry Account Manager, National Account Manager, Enterprise Account Manager, Regional or National Sales Executive, National Sales Executive, Consultant, Territory Manager, or any other job title used to describe persons whose primary job duty was inside sales to businesses.**

**CLASS B:**

> **All persons employed by Granite Telecommunications LLC anytime from February, 2017 to the present anywhere in the U.S. as an inside sales representative under the titles of: Regional Account Manager, Senior Account Manager, Industry Account Manager, National Account Manager, Enterprise Account Manager, Regional or National Sales Executive, National Sales Executive, Consultant, Territory Manager, or any other job title used to describe persons whose primary job duty was inside sales to businesses.**

63.     At the time of this filing, numerous other members of the putative classes seek to join this action and demonstrate that there are others similarly situated who seek to join and claim their overtime wages.  Several members of the putative classes have executed consents to join and are simultaneously filing consents and who has shared information to Plaintiff of similar experience.

64.     Hair and Witkowski are able to protect and represent the putative classes, are willing and able to do so, and consent to doing so, as well as consent to joining this collective action.

65.     Plaintiffs allege for themselves, and on behalf of those similarly situated of the putative classes who elect to opt-into this action, that they are entitled to unpaid wages from Defendant for overtime work performed for which they did not receive

overtime premium pay, and the full lawful amount of overtime pay as required by the FLSA.

66.     Defendant employs, upon information and belief and investigation, an estimated 600 or more inside sales representatives working from its various offices identified in this Complaint and on the Defendant's website including: West Palm Beach, Atlanta, Lincoln, Dallas, Quincy, Orlando, and Chicago.

67.     Upon information and belief, given turnover of employees during the relevant class period of the prior three (3) years, Plaintiff estimates that the putative class to be in the range of 1200 to 1500 or more persons.  Granite's West Palm Beach office alone employed upwards of 100 inside sales representatives, and the Quincy and Atlanta offices may be of similar or larger sizes.

68.     All inside sales representative within these classes described herein and working in all Defendant's offices up through February 2017, were treated as exempt employees without the Defendant ever taking any individualized analysis of the employees' actual work performed under the FLSA testing the application of any exemptions relied upon.

69.     During this period of time up through February 2017, Defendant treated all inside sales representatives as Exempt under the FLSA and did not pay overtime hours, and without a good faith basis, or objectively reasonable basis under the FLSA for doing so.

70.     Thereafter, upon information and belief, Defendant converted some inside sales representatives to non-exempt, including Plaintiff Witkowski and paid some

16

overtime wages, but not for all inside sales representatives, and willfully underpaid such employees the required time and one half their regular rates of pay, and further willfully failed to include the value of commissions in the calculations of the regular rate of pay and overtime rate pay used.

71.     Sometime in approximately February 2017, Plaintiff Witkowski recalls Defendant asserting to him and other sales reps that the company NOW was going to start paying overtime wages, at a flat rate of approximately $10 per hour, although, Plaintiff is not certain of the exact number which he has read in the similar complaint of Paul White in the case of *White v. Granite, Case No:  1:17-cv-03243-TWT* that the pay was $8 or $9 per hour.

72.     In either case, Defendant announced that in order to comply with the wage laws, it was going to now start paying overtime.

73.     However, continued to willfully violate the FLSA by not instituting a time tracking system.   Employees were told to track their own overtime hours worked in the office and submit it for payment.

74.     After the change in overtime practice and policy, Defendant failed to offer to pay inside sales reps for all preceding overtime hours worked prior to this date, and made no inquiry or provided any means by which inside sales reps could submit or claim the prior hours worked.

75.     Defendant continued a practice of misinformation, lack of explanation and confusion on the topic of the FLSA, the companies obligations to pay overtime and the rates for which it was required to pay overtime wages.

76.     Defendant never offered to pay or provided any means by which it would pay inside sales reps for work performed outside the office including such activities as: answering emails, prospecting and telephone calls, which Plaintiffs and the class of similarly situated performed as incidental to their job duties.

77.     Defendant also intentionally never inquired to Witkowski and the other inside sales reps about all prior hours worked prior to this change in policy and practice, and never paid them for all prior overtime hours worked despite now admission that they were non-exempt and entitled to overtime pay.

78.     Thus, Defendant continued to maintain an unlawful scheme and common unlawful pay practice applicable to all inside sales representatives even after February 2017 to under pay overtime hours worked, and not pay overtime wages at the lawfully required rates set by the FLSA.

79.     Defendant instituted and maintained a policy, practice and work environment of intimidated and fear of scrutiny for inside sales reps as a means to limit and prevent reporting and claiming overtime hours worked.  Said differently, even after February 2017, since Defendant did not track their work hours, management lead reps to believe that overtime hours claimed would bring scrutiny on performance and questions of the accuracy of the hours reported.

80.     Defendant's policy as explained to Plaintiffs and all other inside sales representatives prior to February 2017, was that they were exempt from overtime pay and that it would not and did not pay a premium for overtime hours.

81.     After February, 2017, Defendant continued a scheme and plan to evade the

18

FLSA overtime wage laws and requirements, by paying or offering to pay some inside sales representatives $8 or $9 per hour for overtime hours, rates less than the required time and one half of the employees' regular rates of pay, and rates which failed to include the commissions earned as required by the FLSA.

82.     Thus, Defendant willfully underpaid employees and willfully violated the FLSA from February 2017 and continuing again in a scheme or plan to save millions in labor costs to the determination of the inside sales reps.

83.     Defendant willfully refused to pay for overtime hours worked for inside sales representatives despite their clear knowledge that inside sales representatives have worked and continue to work overtime hours, and are properly classified under the FLSA, as non-exempt employees who are automatically due premium overtime compensation for all hours worked over 40 in a work week.

84.     Upon information and belief, all inside sales representatives are supervised by managers, who very closely monitor performance, scrutinize sales representatives and their performance, metrics, such as phone calls and production and report results to the corporate office under a structured, corporate controlled manner, and all of whom had knowledge of their teams of inside sales representatives working overtime hours.

85.     Defendant constantly pressured, intimidated and urged Plaintiffs and all inside sales representatives to work as many hours as necessary to meet quotas, and goals, and up to 100 daily telephone call requirements under threats of formal discipline and termination of employment.

86.     Defendant knew that in order for inside sales reps to meet the production

goals and telephone call quotas that overtime hours were required.  Defendant even expressly communicated to sales representatives such knowledge.

87.    Plaintiff Hair routinely worked overtime hours in the range of 50 to 60 hours per week on average with the knowledge and behest of his superiors, including working through breaks and staying late, but even working on weekends reading and responding to emails and prospecting for new customers outside of work.

88.    Plaintiff Witkowski routinely worked overtime hours in the range of 45 to 50 hours per week on average, with the knowledge and behest of his superiors, including working prior to the shift start time, staying late, and working on weekends or at home by taking phone calls, responding to emails and prospecting for new customers.

89.    Plaintiffs require their payroll records, telephone logs, and all their records in the possession of Defendant in order to properly calculate their regular rates of pay and overtime rates and the wages owed, which as per the FLSA should be done on a weekly pay period basis with each week standing alone, and must include sophisticated and precise calculations given the application of commissions.

90.    Further discovery is necessary as well to discovery from pay records whether Defendant treated or classified Plaintiffs as salaried non-exempt or hourly after February 2017 and see the hours paid and rates used.

91.    Inside sales representatives also were expected and encouraged by management to respond to all customer emails and telephone calls even after scheduled business hours and on weekends, and to prospect for leads outside of the office.

92.    Defendant's policy was to encourage inside sales reps to work prior to and

after the work shifts, and did not discipline against sales reps working such extra hours.

93.     Defendant did not provide a means to clock in and out of their breaks, and automatically deducted 1 hour for a lunch break.

94.     Plaintiff and other sales reps had to stay into the evening hours to communicate with businesses located on the west coast of the U.S. causing those who communicate with businesses in the later time zones to work later in the evenings.

95.     Further, throughout Plaintiffs employment, one or more managers readily observed and could observe inside sales representatives working before and after the scheduled shift time thus placing them on notice of inside sales representatives likely to incur and be entitled to overtime pay.

96.     Some inside sales reps as well worked on the weekends in the offices.

97.     At no time during the relevant time period did Defendant formally discipline inside sales representatives in the West Palm Beach for going over 40 hours in a workweek, and upon information and belief the same practices occurred in all other offices.

98.     All inside sales representatives followed standardized company policies and procedures applicable to all, from shifts, rules, and methods of performing jobs.

99.     The actual job requirements performed by the proposed class of Inside Sales Representatives do not satisfy the elements of any exemptions within FLSA §213, whether as Account Managers, Account Executives or any other titles used to describe them. All performed routine jobs whose primary job duty was production, making the sales pitches to obtain orders for Defendant's telecommunication services.

100.     Plaintiffs, as well as the members of the putative class of similarly situated employees, routinely worked through part or all of their lunch breaks, came in early or stayed late as well as and also performed other work incidental to their job at home.

101.     Pursuant to FLSA §207, Defendant, as the employer of Hair and Witkowski and and the classes of similarly situated employees, were and is currently required to pay an overtime premium at one and one-half times each employee's regular rate of pay hourly rate for hours worked in excess of forty (40) hours per week, which must include the value of bonuses or commissions earned in the calculations.

102.     Defendant clearly knew or should have known, that these inside sales representatives do not satisfy any exemption, specifically: a) they fail the executive exemption as they do not supervise other employees, b) fail the administrative exemption as their primary job duty is sales and production, and does not involve the exercise of discretion and independent judgment in matters of significance affecting the company; and c) clearly are not outside sales representatives or engaged in retail sales; d) are not professionally exempt as the position does not require specialized education and training; e) are not subject to the 13(a)1 highly compensated exemptions, and do not regularly perform exempt duties of an executive, administrative or professional employee.

103.     Moreover, having been operating sales departments in  numerous offices in the US for a decade or more, Defendant has known of and clearly has been aware of lawsuits against other large companies for not properly compensating inside sales representatives properly pursuant to the FLSA.

104.     Upon  information  and  belief,  Inside  sales  representatives  all  had

standardized 9 hour days, approximately or generally 8am until 5pm, or some variance of this shift, with one hour break offered, and worked Monday to Friday.

105.    Defendant did not throughout the relevant three (3) year class period, properly clock, track or record the actual working hours of each inside sales representative in all of their offices.

106.    In order to meet sales quotas and maximize their commission and bonus, Plaintiffs and other sales representatives would routinely work as many overtime hours as they wished with the full knowledge, approval and encouragement of sales Managers/Directors and officers of the Defendant.

107.    Defendant also was keenly aware that in order for inside sales representatives to meet or his 100% of the goals and quotas, inside sales representatives MUST work over 40 hours routinely, and that the position is not a 40 hour per week job, in other words, Defendant expected and required inside sales reps to work overtime.

108.    Inside sales representatives were warned when falling short of quotas that their jobs could be terminated and encouraged to work as many hours as necessary and possible to hit goals and quotas.

109.    Defendant treated Plaintiffs and the class of similarly situated employees as exempt employees up through February 2017, despite the fact that were classified as non-exempt and legally required to pay overtime hours worked without and regardless of the employee requesting the overtime pay.

110.    Defendant's representations and communications to employees about the company's obligations under the FLSA and the employees' rights to overtime pay were

23

false and intentionally misleading, as well as unlawful and unfair, as was the failure to track and record on a timekeeping system the employee's work hours and pay them at the correct lawful rates, including the commissions in the calculations.

111. All insides sales representatives were trained to perform their job duties and expected to perform their job duties in similar manners throughout their multiple offices, and Defendant sought consistency uniformity.

112. All inside sales representatives attended sales meetings and training webinars during which the Defendant went over new procedures, policies and sales protocols and was clear to Plaintiff, applied to all inside sales representatives employed by the Defendant throughout its offices.

113. Defendant should be well aware that the FLSA requires the regular rate of pay calculation to include not only the base pay, but the bonuses and commissions in the calculation; thus the overtime rates of the putative class must be based upon not just the base salary, but the commissions and bonuses as well. See FLSA sections 778.108, 778.117, 778.208, 778.209.

114. The primary job duties and responsibilities, and requirement of the Plaintiffs and the inside sales representatives of the putative classes of similarly situated were similar and standardized: make outbound phone calls, sell the company's services by calling upon names and accounts given to them, and to develop leads of their own to call upon.

115. As of the filing of this Complaint, employees in the Granite Atlanta office have made similar allegations in a prior filed lawsuit styled *White v. Granite*

24

*Telecommunications, LLC, NDGA*, indicating the pay practices complained of occurred in the Atlanta office and to which up to 16 others joined to make similar claims.

**COUNT I**
**VIOLATIONS OF FLSA §207 FAILURE TO PAY OVERTIME WAGES and**
**TRACK TIME AS PER 29 CFR PART 516; AND DECLARATORY ACTION**
**PURSUANT TO 28 U.S.C. SECTIONS 2201 and 2202**

116.    Plaintiffs allege and incorporates by reference all preceding paragraphs of this Complaint and fully restate and re-allege all facts and claims herein.

117.    Defendant has willfully and intentionally engaged in a common company pattern and practice of violating the provisions of the FLSA, by failing to compensate all inside sales representatives (under the various job titles identified in this complaint) as required by the FLSA, overtime wage provisions during one or more weeks.

118.    Plaintiffs and the proposed Putative Classes A and B of similarly situated, comprised of all current and former persons who worked for Granite in the 3 (three) years preceding this complaint up through the present as inside sales representatives were willfully denied overtime compensation in violation of FLSA §207.

119.    Defendant does not, and cannot have a good faith basis for failing to automatically pay Plaintiffs and the class of inside sales representatives overtime pay up through February 2017 for all overtime hours worked in each and every work week.

120.    After February, 2017 Defendant does not, and cannot have a good faith basis for failing to pay Plaintiffs and the class of inside sales representatives overtime wages at rates of one and one half times the employee's' regular rates of pay, including the value of commissions for hours worked, for all hours worked it knew or should

reasonably have known about because of its unlawful practices of not tracking and recording the work hours and requiring employees to submit the hours to be paid.

121.   Additionally, after February 2017, Defendant does not and cannot have a good faith basis for paying employees less than time and one half their regular rates of pay, as hourly paid, non-exempt sales reps are required to be paid time and one half their regular rates of pay.

122.   Defendant violated the FLSA before and even after February 2017 by not including the value of commissions in the regular and overtime rates paid, and by not paying time and one half the regular rates of pay for all overtime hours worked by inside sales reps, regardless of whether they submitted the overtime hours or not.

123.   Defendant's payment of overtime wages (or a premium for overtime hours) for those who dared to submit and claim some or all of their overtime hours at flat rates of $8 to $10 per hour or on a half time rate was a willful, underpayment of overtime wages and a violation of the FLSA, and further a violation for failing to include the value of commissions in the overtime premiums even when paid.

124.   Defendant willfully violated the FLSA for Plaintiffs and the classes of similarly situated by not paying for or offering to pay for all past overtime hours worked for all inside sales reps it knew or should have known were incurred prior to February 2017, the date of which when Granite seemingly admitted to a lawful entitlement to overtime pay, and prior misclassification.

125.   Further, Defendant were aware and clearly knew the inside sales rep positions it employed workers in were a non-exempt position, subject to the time tracking

26

requirements of the FLSA, and automatically required to pay any non-exempt employee overtime premium when they knew or should have known such employees worked any time over 40 hours in a workweek.

126.   Defendant does not, and cannot have a good faith basis under the FLSA for its actions of misclassifying Plaintiff and the class of similarly situated as exempt, and for its subsequent actions of:   paying only $8 or $9 per hour for overtime rates and not inquiring, investigating and paying all present and former employees overtime wages for all previous hours worked at rates of one and one half times the employee's' regular rates of pay after February 2017.

127.   Furthermore, as of August, 2017, another former employee, Paul White commenced a similar lawsuit against Defendant in case no. 1:17-cv-03243-TWT, becoming aware of the challenge to their past misclassification and unlawful pay practices, but Defendant continued to refuse to pay all members of the putative class for their overtime hours.

128.   Plaintiff, and the class of similarly situated, are thus entitled to an equal sum in overtime wages owed at rates of one and one half times their regular rates of pay as liquidated damages for all overtime hours worked, whether paid at $8 or $9, and whether they submitted claims for some hours or not at all.  *See Johnson v. Big Lots Stores, Inc.*, 604 F.Supp.2d 903 at 925 (E.D. La. 2009).

129.   Defendant knowingly and willfully failed to track the hours worked by Plaintiffs and the class of similarly situated employees, comprised of the Plaintiffs Class in violation of the FLSA and 29 CFR Part 576, and thus cannot permitted to deny the

obligation to pay overtime wages for Plaintiffs and the class of similarly situated even when they paid some amounts for overtime hours worked.

130.    Defendant suggested, encouraged and requested that all inside sales representatives work as many hours as they could to meet or exceed sales goals, and have direct knowledge of inside sales representatives working overtime hours yet willfully chose not to compensate Plaintiffs and the class of similarly situated.

131.    Defendant's pay practices, policies and procedures related to work hours and overtime compensation was oppressive, intentionally misleading and intended to discourage and prevent inside sales representative from ever making a request or claim for overtime pay.

132.    Defendant knowingly and willfully permitted inside sales reps to suffer to working off the clock overtime hours without compensation.

133.    By failing to record, report, and/or preserve records of hours worked by the Plaintiffs, and the class of similarly situated inside sales representatives, the Defendant has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA 29 USC 201 *et. seq*., including 29 USC Sec. 211(c) and 215 (a).

134.    Alternatively, even if Defendant paid Plaintiffs and the class of similarly situated on a salary basis, Defendant knew or should have known that the act of paying Plaintiff and all inside sales representatives on a salary, exempt basis without overtime pay, is unlawful and evades the wage and hour requirements of the FLSA such that a

three (3) year statute of limitations applies.

135.    Defendant knew and knows now, that overtime wages are to be paid at one and one half times the employee's' regular rates of pay to include all compensation earned but, as a means to save hundreds of millions of dollars in labor costs, willfully chose to pay less than the required rates.

136.    Defendant have willfully, and lacking upon reliance of any objectively reasonable good faith justification under the FLSA, violated the FLSA by the following unlawful pay practices and schemes applicable to Plaintiff and the class of similarly situated employees:  a) willfully misclassifying them as exempt from overtime wages; b) c) not properly tracking and recording all work hours of inside sales representatives; and c) even when paying some sales reps overtime wages after February 2017, underpaying them the required lawful overtime rates and failing to include the commissions in the rates paid.

137.    Defendant has also intentionally refused to notify their present and former employees that it has violated the FLSA by not paying overtime wages in the past, and has intentionally mislead currently employees about their rights under the FLSA as to past overtime wages for overtime hours worked and about entitlement going forward.

138.    Plaintiffs and the classes of similarly situated routinely worked overtime hours without being paid for all hours worked, including work inside and outside the office, at rates of one and one half times their regular rates of pay, including the value of commissions in the rates paid.

139.    As a result of Defendant's willful violations of the FLSA, Hair, Witkowski

and the Plaintiff Classes, comprised of all other employees similarly situated, have suffered economic damages by Defendant's willful failure to pay overtime compensation in accordance with FLSA §207 and unlawful pay practices.

140.    Due to Defendant's willful violations of the FLSA, a three-year statute of limitations applies to the FLSA violations pursuant to *29 U.S.C. §255(a)*.

141.    As a result of Defendant's unlawful acts and pay practices, Hair, Witkowski and the Plaintiff Classes, comprised of all other similarly situated employees working as inside sales representatives under various titles, have been deprived of overtime compensation in amounts to be determined at trial; and are entitled to recovery of such amounts, liquidated damages in amount equal to the overtime wages due, prejudgment interest, attorneys' fees, costs and other compensation pursuant to *29 U.S.C. §216(b)*, as well as injunctive relief pursuant to *29 U.S.C. §217*.

**WHEREFORE**, JAMES HAIR and CHRISTOPHER WITKOWSKI, individually, and on behalf of all other similarly situated past and present inside sales representatives, seek the following the following relief and ORDER by the Court as follows:

a.    Designation of this action as a collective action.

b.    That Hair and Witkowski be allowed to give notice of this collective action at the earliest possible time to all past and present inside sales representatives employed by Granite in the U.S. at any time during the three (3) year period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the ORDER approving Court Supervised Notice for each respective class;

c.    Designate the Named Plaintiffs as Representative of the Putative Classes with the authority to execute any Collective Class settlement agreement the parties might reach, which is subject to Court's approval before making

any such agreement binding.

d.      That all past and present inside sales representatives be informed of the nature of this collective action, and similarly situated employee's right to join this lawsuit if they believe that they were or are misclassified as an exempt employee;

e.      That the Court find and declare Defendant in violation of the overtime compensation provisions of the FLSA and that such violation is willful;

f.      That the Court find and declare Defendant's violations of the FLSA were lacking in any good faith justification under the FLSA and award liquidated damages for all overtime damages awarded by this Court or a jury;

g.      That the Court enjoin Defendant, under to *29 U.S.C. § 217*, from withholding future payment of overtime compensation owed to members of the Plaintiff Class.

h.      That the Court award to Hair, Witkowski and the Plaintiff Classes, comprised of all similarly situated employees, overtime compensation at a rate of one and one half time their regular rates of pay, including the value of all compensation earned, for previous hours worked in excess of forty (40) for any given week during the past three years;

i.      That the Court award Hair, Witkowski and the Plaintiffs who opt into this action, recovery of their reasonable attorneys' fees and costs and expenses of litigation pursuant to FLSA § 216, including expert fees;

j.      That the Court award Hair and Witkowski a Class Representative service fee award for the justice they sought out for so many and their time and efforts serving in this case as representatives for the putative classes and to their counsel of record;

k.      That the Court issue in order of judgment under 29 U.S.C 216-17, 28 U.S.C. 2201 and 2202 finding that the Defendant unlawfully and willfully violated the FLSA by failing to pay overtime wages and failing to properly and willfully failing to accurately record all hours worked of non-exempt employees, as well as issue an INJUNCTION barring the Defendant from further violating the FLSA;

l.      That the Court Award Prejudgment interest, as provided by law, and;

m.      That the Court award any other legal and equitable relief as this Court may

31

deem appropriate, including the value of underpaid matching funds in company pension or 401k plans in sums to be determined by the Court.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Complaint.

Respectfully submitted by:

*/s/ Mitchell L. Feldman, Esq.*
Florida Bar No.: 0080349
*/S/ Benjamin Williams, Esq.*
Benjamin Williams, Esq.
Florida Bar No.: 30657
**FELDMAN WILLIAMS PLLC**
6940 W. Linebaugh Ave, #101
Tampa, FL 33626
Tele: (877) 946-8293
Fax: (813) 639-9376
Email: mitch@feldmanwilliams.com;
ben@feldmanwilliams.com;
casemail@feldmanwilliams.com
*Attorneys for Plaintiffs*

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on December 18, 2017 I electronically filed this pleading.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


*<u>/s/ Mitchell L. Feldman, Esquire</u>*
MITCHELL L. FELDMAN, ESQUIRE
Florida Bar No.: 0080349