| | |
|---|---|
| JAMES HAIR and CHRISTOPHER WITKOWSKI, individually, and on behalf of all those similarly situated, Plaintiffs, v. GRANITE TELECOMMUNICATIONS, Defendant. | CIVIL ACTION NO. NO.: 9:17-cv-81361-DLB |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND APPROVAL OF ATTORNEY'S FEES**

On July 31, 2018, this Court entered an Order Granting Preliminary Approval of Class and Collective Action Settlement and Authorized Notice of Proposed Settlement to Class and Collective Action Members. (D.E. 65) (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Settlement Class Representatives Plaintiffs James Hair and Christopher Witkowski (the "Named Plaintiffs") hereby submit their Unopposed Motion and Memorandum of Law for Final Approval of Class and Collective Settlement and Approval of Attorney's Fees, and request that this Court enter an award of attorneys' fees, costs and award incentive payments pursuant to the Settlement Agreement and Release Waiver (the "Settlement Agreement," attached hereto as **Exhibit 1**).

## I.    INTRODUCTION

On or about December 18, 2017, Named Plaintiffs commenced this litigation for unpaid overtime compensation on behalf of themselves and similarly situated employees pursuant to the Fair Labor Standards Act (the "FLSA") and corresponding State Laws. *See* Plaintiffs' Amended Collective and Class Action Complaint for Violations of The Fair Labor Standards Act and State

Laws (D.E. 61). Following extensive document productions and negotiations, the Plaintiffs and the Defendant, Granite Telecommunications, LLC ("Granite," and, together with the Plaintiffs, the "Parties") reached a settlement of the underlying claims on a class and collective action basis.

Subject to final court approval, Class Counsel have secured a settlement of Plaintiff's claims on a class-wide basis for significant monetary relief of $714,900.50 (the "Gross Settlement Fund"). The proposed settlement satisfies all of the criteria for final approval under Rule 23 of the Federal Rules of Civil Procedure, as well as the criteria for approval under the Fair Labor Standards Act ("FLSA"). By the instant Motion, Named Plaintiffs now seek final approval of settlement, approval of incentive payments pursuant to §§ 3(c) and 5(d) of the Settlement Agreement, and approval Class Counsels' attorney's fees and costs in the amount of 30% of the Gross Settlement Fund pursuant to §§ 3(a) and 5(c) of the Settlement Agreement.

On July 31, 2018, the Court took the first step in the settlement approval process when it granted preliminary approval of the settlement and directed that notice be mailed to class members. (D.E. 65). Pursuant to the Preliminary Approval Order, members of the classes were notified of the terms of the settlement and their right to opt-out of or object to the settlement pursuant to a mailing on August 24 and a reminder mailing on September 14. As of the date of this filing, no class members have objected to the settlement, and only one class member has opted-out of the settlement. Conversely, 127 individuals filed claim forms to participate in the settlement and claim their share of the settlement funds. Respectfully, with such overwhelming support, and for the reasons stated below, the Court should grant Final Approval of the Settlement, award incentive payments pursuant to sections 3(c) a d 5(d) of the settlement, and

award of Class Counsels' attorney's fees and costs in the amount of 30% of the Gross Settlement Fund per paragraph 3(a) and 5(c) of the Settlement Agreement.

## II.     FACTUAL BACKGROUND

Defendant, Granite Telecommunications LLC ("Granite") is a telecommunications company who sells products and services for voice, data, internet, wireless, video and secure network solutions throughout the United States. Named Plaintiffs, James Hair and Christopher Witkowski, worked for Granite as "inside sales representatives."

After filing the initial suit, but before the Settlement Agreement or Preliminary Approval Order, the Named Plaintiffs were joined by thirteen other current and former Granite employees who filed consents to join in this action pursuant to 29 U.S.C. § 216(b): Nicholas James Eddy; Kathryn Gill; Timothy Gray; Kris Holt; Dorothy Kidari; Vladimir Kolodyazhnyi; Thomas Krumenaker; Cameron McMillan; Tommy Morgado; Todd Nigro; Gary Orr; Jeremy Roberts and Naton Wells (the "Opt-In Plaintiffs" or together with the Named Plaintiffs, the "Plaintiffs").

The Named Plaintiffs, the Opt-In Plaintiffs, and the other class members all worked for Granite as sales representatives under various titles: Regional Account Manager, Senior Regional Account Manager, Industry Account Manager, Senior Industry Account Manager, National Account Manager, Senior National Account Manager, Enterprise Account Manager, Enterprise Client Manager, Senior Enterprise Client Manager, Relationship Development Manager, Senior Relationship Development Manager and Relationship Development Associate.

Although the rate of pay, clients, commission plans, and specific job duties differed under the various job titles, Plaintiffs all shared, broadly speaking, the same responsibility: selling and/or attempting to sell voice and/or data communications products or services. Plaintiffs and

the class members performed their jobs from Granite's offices located in Georgia, Florida, Illinois, Massachusetts, New York, Pennsylvania, Rhode Island, and Texas.

In this lawsuit, Plaintiffs allege that Defendants misclassified inside sales representatives as exempt from overtime compensation, and failed to pay the legally required overtime compensation for all hours worked in excess of forty during any given week in violation of the FLSA and corresponding State Laws in Florida,[1] Illinois, Massachusetts, New York, Pennsylvania, Rhode Island, and Texas pursuant to Federal Rule of Civil Procedure 23.[2] (the "State Law Claims").

---

[1] As noted in the motion for preliminary approval filed on June 21, Plaintiffs' Florida law claims include a claim under Fla. Stat. § 448.08 and Florida common law claims for breach of contract, unjust enrichment, and quantum meruit. Such claims can be asserted on a class-wide basis for purposes of settlement. Although some courts have denied contested class certification motions involving such claims in the context of *adversarial litigation*, those determinations were based on significant case management challenges presented by individualized questions of proof required to establish the elements of Florida state law breach of contract, unjust enrichment, and quantum meruit claims. *See, e.g., Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191-95 (11th Cir. 2009), *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1277-79 (11th Cir. 2009); *Clausnitzer v. Fed. Exp. Corp.*, 248 F.R.D. 647, 657-63 (S.D. Fla. 2008). Those concerns are not implicated in a settlement class like this one. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."); *see also In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012) ("Thus, the existence of a settlement that eliminates manageability problems can alter the outcome of the predominance analysis."); *In re APA Assessment Fee Litig.*, 311 F.R.D. 8, 18 (D.D.C. 2015) ("The Court therefore concludes that—even if reliance could not be shown through class-wide proof—the predominance requirement is satisfied here."); *Flournoy v. Honeywell Int'l, Inc.*, 239 F.R.D. 696, 699-700 (S.D. Ga. 2006) ("Given the fact that this is a settlement class, common questions of fact and law predominate over those issues requiring individualized proof."); *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 195 (S.D.N.Y. 2005) ("In this case, the removal of [the manageability] factor from consideration alleviates the predominance defect."). Indeed, courts around the country have certified similar claims under Florida state law as part of large, multi-state class action settlements involving overtime claims. *See, e.g., Leverage v. Traeger Pellet Grills, LLC*, Case No. 16-cv-00784-KAW, 2017 WL 2797811, at *4 (N.D. Cal. June 28, 2017) (approving settlement where plaintiffs asserted state law claims—including under Florida law—for "unpaid wages"); *Hightower v. JPMorgan Chase Bank, N.A.*, Case No. CV 11-1802 PSG (PLAx), 2015 WL 12644569, at *1 (C.D. Cal. Feb. 3, 2015) ("The Complaint brings state wage and hour claims for off-the-clock work, overtime, and unpaid wages under . . . Florida . . . law as well as under the federal Fair Labor Standards Act."); *Dent v. ITC Service Group, Inc.*, No. 2:12–cv–00009– JCM–VCF, 2013 WL 5437331, at *1 (D. Nev. Sept. 27, 2013) (Rule 23 class under, *inter alia*, Florida law defined by whether individuals "worked overtime"); *Salva v. Hewlett-Packard*, Case No. 1:14-cv-07484, ECF No. 52 (S.D.N.Y. Sept. 26, 2014) (alleging claims for "unpaid overtime wages for hours worked above 40 in a workweek, as required by the wage and hour laws in the States," including Florida).

[2] The addition of state law claims to a lawsuit in connection with submitting a settlement for approval to the Court is a routine feature of class action settlements. *See, e.g., Cobell v. Salazar*, 679 F.3d 909, 914 (D.C. Cir. 2012); *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1370 (S.D. Fla. 2007); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1316 (S.D. Fla. 2005).

Granite denies Plaintiffs' allegations and maintains that it has complied with the FLSA and the State Law Claims. Specifically, Granite denies that it misclassified Plaintiffs as exempt employees and denies all liability under the FLSA and the State Law Claims.

Beginning in March 2018, the Parties conducted informal discovery of extensive records and data, and engaged in multiple, extensive, days-long negotiations. Ultimately, the Parties reached a Rule 23 class and FLSA collective class settlement memorialized in the Settlement Agreement.

### III.     <u>SETTLEMENT TERMS</u>

The parties have agreed to monetarily resolve the litigation for a Gross Settlement Fund of $714,900.50. The Gross Settlement Fund amount is based on the Parties' estimation of potential damages for each of the settlement class members for the applicable eligible periods, as defined below. The Parties submitted the Settlement Agreement to the Court, and on July 31, 2018, this Court issued the Preliminary Approval Order.

The Settlement Class Members are comprised of those persons employed by Granite falling within the following definitions:

a. **FLSA Settlement Class.** For purposes of the collective action filed pursuant to 29 U.S.C. § 216 and the class action, the class is defined as (1) any and all persons employed by Granite in an Eligible Position for the applicable Eligible Period, and (2) any and all persons who filed an opt-in consent form in the Civil Action on or before April 19, 2018 (the "FLSA Settlement Class").

b. **State Law Settlement Class.** For purposes of the class action claims asserted under Rule 23 of the Federal Rules of Civil Procedure, the class is composed of all members of the FLSA Settlement Class employed by Granite subject to the laws of Florida, Illinois, Massachusetts, New York, Pennsylvania, Rhode Island, or Texas at any time during the applicable Eligible Period (the "State Law Settlement Class").

c. **Eligible Positions.** An "Eligible Position" means a Senior Regional Account Manager, Industry Account Manager, Senior Industry Account Manager, National Account Manager, Senior National Account Manager, Enterprise Account Manager, Enterprise Client Manager, Senior Enterprise Client Manager, Relationship

Development Manager, Senior Relationship Development Manager, or Relationship Development Associate in Defendant's sales or network integration organizations who sold and/or attempted to sell voice and/or data communications products or services and who earned less than $100,000 gross earnings from salary and commissions in a calendar year.

d. **Eligible Period.** For individuals who held the positions of Enterprise Client Manager, Senior Enterprise Client Manager, Relationship Development Manager, or Senior Relationship Development Manager, the Eligible Period is June 1, 2015 through January 1, 2017. For individuals who held any of the other titles listed above, the Eligible Period is June 1, 2015 through July 1, 2018. And, for individuals who filed an opt-in consent form in this action on or before April 19, 2018, the applicable Eligible Period runs from the date three years prior to the filing of their opt-in consent form through July 1, 2018.

The Settlement Agreement provides that the Settlement Class Members who submit a claim shall receive their allocated portion of the Gross Settlement Fund, pursuant to a formula agreed to by the Parties and preliminarily approved by the Court. The formula takes into account the number of weeks each individual worked as a Settlement Class Member during the applicable Eligible Period, and the amount earned in salary and commissions while working for the Defendant during this period.[3] The resulting payment equates to approximately 2 hours of overtime per week.

Those Settlement Class Members who submitted a claim and the members of the State Law Settlement Class who do not opt out will be bound by a limited release of all of their overtime-related claims for their applicable Eligible Period.

The Settlement Agreement also allows for the Court to award modest service awards to the Named and Opt-In Plaintiffs for their participation, risk, and effort involved in reaching this settlement, in the amounts of $5,000 and $2,500, respectively; as well as payment of Class Counsel's attorneys' fees and costs up to 30%. Defendants do not oppose these requests.

---

[3] For a more detailed description of the compensation formula, please refer to Paragraph 12(a) of the Settlement Agreement, attached hereto as **Exhibit 1**.

Finally, as part of separate agreements—attached hereto as **Exhibit 2** and **Exhibit 3**—the Named Plaintiffs have also agreed to general releases of all claims of any type they may have against Granite in exchange for separate payments of $3,500.

Under the terms of the Settlement Agreement and the Preliminary Approval Order, Court-Authorized Notice was issued to 235 Settlement Class Members. *See* Declaration of Abigail Schwartz, ¶ 10 (attached hereto as **Exhibit 4**). Extensive efforts were made by the settlement administrator, Rust Consulting ("Rust") to ensure delivery of these mailed notifications, and Rust placed a telephone call to the one class member whose notice form remained undeliverable after these efforts. Schwartz Decl., ¶¶ 11-12. As of the date of this motion, 127 Settlement Class Members have submitted their claims for their portions of the Gross Settlement Fund.[4] Schwartz Decl. ¶ 14. There are no Settlement Class Members who have submitted an objection to the settlement, and only one Settlement Class Member has opted-out of the settlement. Schwartz Decl. ¶¶ 15-16.

Settlement Class Members continued to respond to the notice after the formal deadline to do so passed. Schwartz Decl. ¶ 14. Counsel for the Parties have conferred and have agreed that those claims submitted on or before the date of the final approval hearing in this matter should be honored, and the Parties hereby request the Court's leave to do so.

In light of the overwhelming support from Settlement Class Members who filed their claims, (and the lack of oppositions thereto) Class Counsel now request that the Court approve the settlement as fair, reasonable and adequate Pursuant to the terms of the Settlement Agreement, and the Preliminary Approval Order.

---

[4] The rate of participation in the settlement equates to 62% of the available awards and 54% of the Settlement Class Members. Schwartz Decl. ¶ 14.

## IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The District Court is charged with approving any settlement agreement in a class action. Fed. R. Civ. P. 23(e). The court may approve the settlement "only after a hearing and on a finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate." *Id.*

The Eleventh Circuit has identified the following factors as relevant to review of whether a class settlement's terms are fair, reasonable and adequate: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.[5] *See Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984)*.*

The proposed Settlement Agreement is fair, adequate and reasonable, and treats Settlement Class Members equitably relative to each other, given the costs, risks and probability of the success if the current complex litigation were to continue.

The Eleventh Circuit has identified the following factors as relevant to review of whether a class settlement's terms are fair, reasonable and adequate: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.[6] *See id.* The proposed Settlement Agreement

---

[5] At this point, prior to preliminary approval and distribution of notice of the settlement to the Settlement Class Members, it is impossible to know the substance and amount of any opposition to the settlement.

[6] At this point, prior to preliminary approval and distribution of notice of the settlement to the Settlement Class Members, it is impossible to know the substance and amount of any opposition to the settlement.

is fair, adequate and reasonable, and treats Settlement Class Members equitably relative to each other, given the costs, risks and probability of the success if the current complex litigation were to continue.

### 1. Likelihood of Success at Trial

"Plaintiffs' likelihood of success at trial is not only the first Bennett factor, it is also by far the most important factor in evaluating a class action settlement." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323 (S.D. Fla. 2007) (quotation and citation omitted); *accord Knight v. Alabama*, 469 F. Supp. 2d 1016, 1032-33 (N.D. Ala. 2006) ("The likelihood of success at trial is by far the most important factor when evaluating a settlement."). "The likelihood of success at trial is weighed against the amount and form of relief contained in the settlement." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005). "The Court, however, has neither the duty nor the right to reach any ultimate conclusions on the issues of fact or law which underlie the merits of the dispute . . . In fact, absent fraud, collusion or the like, the Court should be hesitant to substitute its own judgment for that of experienced counsel representing the class." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 315 (N.D. Ga. 1993) (citations omitted).

With respect to this first factor, Plaintiffs' likelihood of success at trial was not clear. The disputed questions of law and fact in this case were complex, and Plaintiffs were not certain to prevail on the issue of liability or at the class or collective action certification stage. Among other things, Granite disputed that it had misclassified any of the relevant positions as exempt. In addition, significant bona fide disputes existed about the propriety of maintaining this action as a nationwide class action, involving employees in several different job classifications with different responsibilities, different levels of seniority, and different duties. In addition,

employees in each job classification worked in several different offices under many different managers and were potentially subject to meaningfully different supervision and employment practices regarding job duties and hours worked.

Moreover, as discussed in more depth below in the context of the range of possible recovery, the disputed questions of law and fact also included Granite's factual and legal basis for contending that, even if this matter could proceed on a class or collective basis and Plaintiffs succeeded at the liability stage, Plaintiffs would only be entitled to a limited damages award.

In light of these disputed questions of fact and law, it is clear that both Parties face significant risks if this case were to proceed to trial. This uncertainty and high degree of risk weighs in favor of final approval of the settlement.

2. **Range of Possible Recovery and Point in Range of Possible Recovery Where Settlement is Fair, Adequate, and Reasonable**

The next two *Bennett* factors—the range of possible recovery and the point on or below the range at which a settlement is fair, adequate, and reasonable—are typically considered together. *See, e.g.*, *Lipuma*, 406 F. Supp. 2d at 1322; *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988). "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma*, 406 F. Supp. 2d at 1323. "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens*, 118 F.R.D. at 542.

The settlement terms regarding class member recovery were based on careful analysis by both Plaintiffs and Defendant of the overtime compensation potentially due to the individual class members, and these settlement terms represent an accurate accounting of the class members' range of recovery.

First, from the beginning of the Parties' settlement negotiations in March 2018, the Parties agreed to review relevant timestamped data from a sample[7] of the Granite sales force, as well as aggregated timestamped data from across the entire Granite sales force in an effort to estimate a reasonable number of overtime hours worked across the class. The Parties also reviewed the actual overtime hours reported by Regional Account Managers since salespeople in that position were reclassified as non-exempt in February 2017 and began reporting overtime hours.

The sample analysis consisted of an in-depth review of electronic data with timestamps that tend to show when sales personnel were performing work. The data consisted of: (1) emails from employees' work email accounts, showing the time work-related emails were sent, (2) phone records, showing the time and duration of work-related telephone calls, and (3) timestamped entries into Salesforce, a database used by Granite salespeople to record interactions with prospective customers. Even a limited subset of this data was voluminous, consisting of nearly 80 gigabytes of email files and records of thousands of telephone calls and Salesforce entries.

Using this data, the Class Counsel was able to reconstruct the activities of the members of the sample group in down-to-the-minute detail. By cross-referencing these data points, the Parties could determine when a given individual likely began working on a given day (i.e. their first email, telephone call, or Salesforce entry in the morning), when they stopped for lunch or worked through some or all of their lunch break (i.e. whether they had emails, telephone calls, or Salesforce entry between 12:00 pm and 1:00 pm), and when they stopped working for the day (i.e. their last email, telephone call, or Salesforce entry in the evening). Careful review of this data showed that the sample group worked limited hours that might qualify for overtime pay.

---

[7] Data from 36 separate individuals was reviewed as part of the sample analysis.

In addition, the Parties reviewed aggregate data showing the timestamps of over 227,000 telephone calls, over 62,000 Salesforce entries, and over 127,000 Salesforce logins from across the Granite sales force during specific time periods. Review of this data showed that the overwhelming majority of relevant activity—telephone calls, Salesforce entries, and Salesforce logins—took place during standard work hours.

Although Plaintiffs themselves and others contacted by Plaintiffs' counsel reported working significant overtime hours, some in excess of 10 or 20 hours each week, analysis of the data tended to show lower numbers. Some of the analysis showed as little as one hour per week worked outside of normal business hours. Further, when non-standard workweeks (ie. Holidays, vacation days and paid time off) are incorporated into the analysis, there are a significant number of workweeks in which the hours worked were less than forty. Such limited overtime hours are consistent with the actual overtime hours reported by Regional Account Managers since February 1, 2017. Accordingly, a rigorous factual analysis of the data showed that, at trial, Granite would have a strong basis for arguing for a significantly limited damages award.

In addition, Granite had reasonable legal arguments for limiting recovery by the Settlement Class Members. First, Granite contended that certain of the overtime hours worked constituted *de minimis* activity. *See, e.g.*, *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984). This defense could have precluded counting work lasting less than ten minutes or occurring while the class member was primarily engaged in personal pursuits towards the 40-hour-per-week threshold for overtime pay.

Second, Granite contended that any damages should be calculated using the fluctuating workweek method.[8] *See Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1311 (11th

---

[8] Pennsylvania law does not permit use of the fluctuating workweek method. *Chevalier v. Gen. Nutrition Ctrs., Inc.*, 177 A.3d 280, 302 (Pa. Super. Ct. 2017). Granite only recently opened a location in Pennsylvania, and only a

Cir. 2013); *accord Black v. SettlePou, P.C.*, 732 F.3d 492, 498 (5th Cir. 2013); *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 666 (7th Cir. 2010); *see also Valerio v. Putnam Associates Inc.*, 173 F.3d 35 (1st Cir. 1999) (applying fluctuating workweek to claims under Massachusetts law); *Goodrow v. Lane Bryant*, 432 Mass. 165, 176-77 (2000) (same); *Anderson v. Ikon Office Solutions, Inc.*, 38 A.D.3d 317, 317, 833 N.Y.S.2d 1, 1 (1st Dep't 2007) (New York law). If successful, this defense would reduce Plaintiffs' recovery by two-thirds, as any overtime hours would be compensated at a rate of one-half of the regular rate of pay, rather than time-and-a-half. *See, e.g.*, *Lamonica*, 711 F.3d at 1311-12.

Plaintiffs disagree with Granite's legal arguments but nonetheless recognize that these defenses present substantial litigation risk. Indeed, if Granite succeeded on just one of these two theories, a total recovery well below the settlement amount was likely even if Plaintiffs prevailed on the liability and class certification issues.

Because of the wide range of possible recovery based on both a thorough review of the relevant data and on the legal grounds Granite advanced for limiting damages even further, Plaintiffs' counsel's judgment is that a recovery well below the ultimate settlement amount was a possible outcome here. Accordingly, the settlement achieved is within the range of fair and reasonable outcomes given the overall range of possible recoveries and the strength of Plaintiffs' claims. This factor therefore weighs in favor of preliminarily approving the settlement.

### 3. The Complexity, Expense and Duration of Litigation

With respect to the complexity, expense, and duration of litigation, "[t]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive

---

limited number of Settlement Class Members worked in Pennsylvania, so the vast majority of Settlement Class Members still faced significant legal risk from this argument.

litigation." *Lipuma*, 406 F. Supp. 2d at 1323. "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigations." *Behrens*, 118 F.R.D. at 543.

This case is both factually and legally complex and would be expensive to litigate through trial. As discussed above, Granite agreed to produce a significant volume of documents and data Gathering, producing, reviewing and analyzing this data—itself a highly limited subset of the total data that might have been available to show working hours of the Settlement Class Members—required significant time and expense. Proceeding with full-blown discovery, motion practice, and trial would be significantly more complex and expensive. On top of that time and expense, other written discovery, depositions, and motion practice would have consumed substantial effort and resources as well. Accordingly, this factor weighs in favor of preliminarily approving the settlement.

### 4. The Stage of Proceedings at Which Settlement Was Achieved

The sixth factor, the stage of the proceedings at which settlement was achieved, also weighs in favor of preliminary approval. To evaluate this factor, the court looks to whether that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation. *Lipuma*, 406 F. Supp. 2d at 1324; *Behrens*, 118 F.R.D. at 544. Early settlement is favored, and full-blown discovery is not necessary. *See, e.g.*, *Lipuma*, 406 F. Supp. 2d at 1324.

Here, the proposed settlement was achieved early in the litigation, but Plaintiffs had the voluminous data produced by Granite to analyze independently, use to weigh the merits of the case, and conduct informed negotiation. Resolution of the case at this stage permitted the Parties

to engage in thorough data analysis that informed the crafting of a fair resolution of this action, but without time-consuming and expensive litigation through a protracted discovery process.

For all of the foregoing reasons, the settlement is fair, reasonable, and adequate, and should be finally approved by this Court.

## OTHER PENDING CASES

There are two cases involving Granite currently pending in other courts that also assert overtime claims against Granite by certain of its sales employees. The first, *Granite Telecommunications, LLC v. Contino et al.*, Civil Action No. 2014-699 (Massachusetts Superior Court, Norfolk County) (the "Massachusetts Action"), involves a series of counterclaims[9] against Granite principally involving allegedly unpaid sales commissions based on several complex theories. Their counterclaims also include a Massachusetts state law claim for allegedly unpaid overtime. These counterclaims were asserted on a class basis, which class was certified in an order entered on February 26, 2018.[10] The class period in the Massachusetts Action runs from June 5, 2008, through May 7, 2014, so it does not overlap with the proposed class period here. On October 22, 2018, a Massachusetts Superior Court judge preliminarily approved a settlement in the Massachusetts Action.

The second, *White v. Granite Telecommunications*, Case No. 1:17-cv-03243-TWT (N.D. Ga.) (the "White Action"), involves similar allegations that Granite failed to pay overtime to its inside sales representatives in violation of the FLSA and relevant state law. Prior to the commencement of this action, the parties in the White Action reached a settlement (the "White

---

[9] The Massachusetts Action began as an action by Granite to enforce the noncompetition and confidentiality obligations of two of its former highly paid—in excess of $1 million annually—salespeople. After being enjoined from violating their contractual obligations to Granite, the Counterclaim-Plaintiffs in that matter brought the counterclaims discussed above against Granite.

[10] The order certifying the class is dated February 20, 2018, but was not entered on the docket in the Massachusetts Action until February 26. *See* ECF No. 48, ¶ 3.

Settlement"). The White Settlement resolves the state and federal overtime-related claims of Regional Account Manager earning less than $100,000 gross earnings from salary and commissions in a calendar year for the period of January 1, 2015, through February 1, 2017. On September 13, 2018, the Court approved the Class and Collective Action Settlement in the White Action. *White v. Granite Telecommunications*, Case No. 1:17-cv-03243-TWT, ECF No. 71 (N.D. Ga. Sept. 13, 2018).

The rights of class members in these cases are not affected by the settlement here, so the existence of these other cases should have no effect on the decision to grant final approval of this settlement. As an initial matter, the White Settlement has been finally approved, and the White Action is no longer pending having been finally resolved. Similarly, a settlement has been reached in the Massachusetts Action and preliminarily approved by a state court judge.

Moreover, the resolutions of the White Action and the Massachusetts Action are entirely separate from this matter and do not bear on the fairness, reasonableness, or adequacy of the settlement in this matter. As for the Massachusetts Action, there is no overlap between the claims raised in the Massachusetts Action and the claims at issue in this case. The Settlement Agreement here specifically excludes commissions-based claims, which are the core of the Massachusetts Action. And as to the simple claims for unpaid overtime that exist in both this action and the Massachusetts Action, the claims cover entirely separate time periods. The Massachusetts Action covers only the period between June 5, 2008 through May 7, 2014, while this settlement covers the period between June 1, 2015 through July 1, 2018. There are, however, a limited number of *individuals* who are members of both classes. Accordingly, the release in this action only releases overtime-related claims during the applicable Eligible Period and does not extend to the entirely separate class period at issue in the Massachusetts Action.

For avoidance of doubt, the release further expressly clarifies that it does not extend to overtime-related claims asserted in the Massachusetts Action during the class period in that action. Finally, the proposed notice here also states expressly that this settlement does not affect any individual's rights or claims in the Massachusetts Action.

Similarly, the White Action encompasses claims that are distinct from the claims subject to the settlement here. The White Action settlement only covers individuals employed by Granite as Regional Account Managers. Because those claims have already been settled, and because—effective February 1, 2017—Granite adjusted certain pay practices to, among other things, pay Regional Account Managers supplemental pay for each hour worked in excess of 40 hours per week, the settlement here only includes claims for overtime pay by individuals employed by Granite as Regional Account Managers for the named Plaintiffs and others who have opted out of the White Settlement.[11] The remaining claims for overtime pay here involve sales positions *other* than the Regional Account Manager position, so the claims in this action are separate and distinct from those in the White Action. As with the Massachusetts Action, there are nonetheless some *individuals* who are members of both classes. Accordingly, the release in this action makes clear that overtime-related claims for the class period of the White Action settlement are not released as part of this settlement. As a result, an individual who is a member of the settlement classes in both this case and in the White Action may participate in both settlements without affecting his or her rights to participate in either settlement.

## V.  INCENTIVE AWARDS

By their instant Motion, Class Counsel is seeking an award of modest service payments of $5,000.00 each for the Named Plaintiffs, and $2,500.00 for each of 13 Class Members who

---

[11] The two named Plaintiffs and 12 of the individuals who opted in to this action prior to April 19, 2018 have submitted requests to opt out of the White Settlement.

filed opt-in claims before the Preliminary Approval Order was issued and before the Settlement Agreement was reached. Under the terms of the Settlement Agreement §§ 3(c) and 5(d), Granite agrees not to oppose the modest service award payments for each of the Named Plaintiffs and 13 Class Members to compensate them for their time and service on behalf of the absent class members.

"Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Hosier v. Mattress Firm, Inc.,* 2012 U.S. Dist. LEXIS 94958, 14-15 (M.D. Fla. June 8, 2012). "Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives." *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1357 (S.D. Fla. 2011) *See also Williams v. Omainsky*, No. 15-0123-WS-N, 2017 U.S. Dist. LEXIS 11429, at *14-15 (S.D. Ala. Jan. 27, 2017)

Here, the Named Plaintiffs assumed the risk of coming forward and representing the potential class members in this action. The Named Plaintiffs expended significant time initiating the investigation of this claim, assumed the risks of an adverse outcome, and assumed the risk that their participation in this lawsuit may have adverse consequences on their current or future employment. Accordingly, the $5,000.00 service award to each of the Named Plaintiffs is reasonable in the instant case. "Such awards are justified when the class representatives expend considerable time and effort on the case, especially by advising counsel, or when the representatives risk retaliation as a result of their participation." *Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001)

Similarly, the 13 Class Members who assumed the risk of filing their claim forms prior to the Settlement Agreement or the Preliminary Approval Order were equally instrumental in maintaining the lawsuit and reaching the settlement. These 13 individuals spent time and effort advising Class Counsel in analysis of discovery, aided Class Counsel in identifying additional job titles affected, and played a critical role in demonstrating the merits of the claim, significantly contributing to the ultimate resolution on behalf of the class. Accordingly, the modest service award of $2,500.00 is reasonable in this case.

These modest service awards are within the range of service awards routinely awarded by courts in similar cases. *See In Re S. Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)) (approving $303,000 payment to each class representative plaintiff in employment case where class members on average received $38,000); *Gillard, Stramiello and Pate v. Fleetmatics*, CASE NO.: 8:16-CV-00081-JDW-MAP, ECF No. 70 (M.D. Fla. Nov. 4 2016) (awarding service awards of $5,000.00 to named Plaintiffs and $2,500 to another opt-in Plaintiffs); *see also Demaria-Dominguez v. Keys Prods.,* No. 15-10224-CIV-MARTINEZ-GOODMAN, 2016 U.S. Dist. LEXIS 185591 (S.D. Fla. Dec. 7, 2016) (awarding $15,000.00 to the Named Plaintiff and $2,000.00 to each of the nine opt-in plaintiffs).

On balance, these service award requests are reasonable and modest when compared to the benefit conferred upon the other class members who now had the opportunity to claim their wages under this settlement due to plaintiffs' efforts – especially considering that other class members' claims would have diminished or expired but for plaintiffs' efforts.

These service awards are reasonable and necessary to recognize the plaintiffs who took the courage to champion a class and collective action for present and former co-workers; who undertake the duty and responsibility to successfully negotiate a resolution on behalf of other

class members; and whose time and dedication participating in the investigation and discovery which make a settlement even possible.

## VI.  ATTORNEYS' FEES AND COSTS

By their instant Motion, Class Counsel is applying for thirty percent (30%) of the Gross Settlement Fund as attorneys' fees ($214,470.15), an amount that includes their reasonable litigation costs. *see* Fed. R. Civ. P. 23(h) & 54(d)(2). By agreement and representation to the Court, Granite does not oppose Class Counsel's request *See* **Exhibit 1** -Settlement Agreement §3(a) and 5(c); (D.E. 60 p. 20).

### 1.  The Eleventh Circuit Dictates That Class Counsel Fees Should Be Awarded From the Common Fund Created Through Class Counsel's Efforts.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained. *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 120 (N.D. Ill. 1989) (citation omitted); *see also Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1195 (6th Cir. 1974). The common benefit doctrine recognizes that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Boeing*, 444 U.S. at 478,; *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 392 (1970). The Supreme Court, the

Eleventh Circuit, and courts in this District have all noted that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." I*n re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323, 1333 (S.D.Fla.2001) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval.").

"In the Eleventh Circuit, class counsel is awarded a percentage of the fund generated through a class action settlement." *In re Checking Account Overdraft Litigation*, 830 F.Supp.2d 1330, 1358 (S.D. Fla. 2011). In *Camden I,* the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I,* 946 F.2d at 774.

"The lodestar approach should not be imposed through the back door via a 'cross-check.'" *In re Checking Account Overdraft Litigation*, 830 F.Supp.2d at 1362. Rather, the lodestar "creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation." *In re Quantum Health Resources, Inc.,* 962 F. Supp. 1254, 1256 (C.D. Cal. 1997). Precisely for this reason, in *Camden I,* the Eleventh Circuit criticized lodestar and the inefficiencies that it creates. 946 F.2d at 773–75. In so doing, the court "mandate[d] the *exclusive* use of the percentage approach in common fund cases, reasoning that it more closely aligns the interests of client and attorney, and more faithfully adheres to market practice." *Goldberger v. Integrated*

*Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000) (emphasis added); *see also* Alba Conte,

*Attorney Fee Awards* § 2.7, at 91 fn. 41 ("The Eleventh ... Circuit[ ] repudiated the use of

the lodestar method in common-fund cases"). Under *Camden I*, courts in this Circuit

regularly award fees based on a percentage of the recovery, without discussing lodestar at

all. *See, e.g., David v. American Suzuki Motor Corp.,* 2010 WL 1628362 (S.D. Fla. Apr. 15,

2010).[12] "[A] common fund is itself the measure of success and represents the benchmark

on which a reasonable fee will be awarded.... In this context, monetary results achieved

predominate over all other criteria." *Camden I,* 946 F.2d at 774 (citations and alterations

omitted).

## 2. The *Camden I* Factors Support an Award of 30% of the Fund.

This Court has substantial discretion in determining the appropriate fee percentage awarded

to counsel. "There is no hard and fast rule mandating a certain percentage of a common fund

which may be awarded as a fee because the amount of any fee must be determined upon the facts

of each case." *In re Sunbeam,* 176 F.Supp.2d at 1333 (quoting *Camden I,* 946 F.2d at 774).

Here, pursuant to the terms of the Parties' Settlement Agreement, Plaintiff's undersigned

counsel may receive up to 30% of the common fund created by their efforts. Respectfully, here

such a fee is appropriate, given the factual circumstances of this case, and well within the range

of typical fee awards for common fund cases as well.

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class-

action counsel are: (1) the time and labor required; (2) the novelty and difficulty of the questions

involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other

---

[12] *See Pierre - Val v. Buccaneers Ltd. P'ship,* No. 8:14-cv-01182-CEH-EAJ, 2015 U.S. Dist. LEXIS 187669, at *5-6 (M.D. Fla. Dec. 7, 2015); *see also Stahl v. MasTec, Inc.,* 2008 WL 2267469 (M.D. Fla. May 20, 2008); *Sands Point Partners, L.P. v. Pediatrix Med. Group, Inc.,* 2002 WL 34343944 (S.D. Fla. May 3, 2002); *Fabricant v. Sears Roebuck & Co.,* 2002 WL 34477904 (S.D. Fla. Sept. 18, 2002).

employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Camden I,* 946 F.2d at 772 n. 3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974)).

These twelve factors are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *In re Sunbeam,* 176 F.Supp.2d at 1333 (quoting *Camden I,* 946 F.2d at 775). These factors are merely guidelines, and the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Id.* (quoting *Walco Inv., Inc. v. Thenen,* 975 F.Supp. 1468, 1472 (S.D. Fla.1997)). The *Camden I* factors are discussed below:

a. **Time and Labor Involved.**

Class counsel expended significant effort to achieve the $714,900.50 Gross Settlement Fund for the FLSA Settlement Class and the State Law Settlement Class members. As the Court is aware, this case has been pending for almost a year. During this time, the parties engaged in extensive informal discovery and two separate, day-long settlement conferences and negotiations before the Plaintiffs were able to resolve this case. In addition to reviewing corporate policies, work schedules, payroll records etc., Class Counsel procured 80 gigabytes of data consisting of email records, phone records and time-stamped database records to analyze and recreate the

activities of the sample group in down-to-the-minute detail. By cross-referencing these data points, the Parties could determine when a given individual likely began working on a given day (i.e. their first email, telephone call, or Salesforce entry in the morning), when they stopped for lunch or worked through some or all of their lunch break (i.e. whether they had emails, telephone calls, or Salesforce entry between 12:00 pm and 1:00 pm), and when they stopped working for the day (i.e. their last email, telephone call, or Salesforce entry in the evening).

Subsequently, the parties negotiated, drafted and edited a detailed settlement agreement, which incorporated all terms and which all parties have signed.

In performing the aforementioned work on behalf of the class, Class Counsel spent well over 300 hours of attorney and paralegal time. Moreover, the requested fees are not based solely on the time and effort already expended; they are also meant to compensate Class Counsel for time that will be spent administering the settlement in the future. *See deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request" of 33% of the fund); *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time"). In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment. For example, since the Notices were sent out, Class Counsel and staff have responded to numerous inquiries from class members requesting information regarding the terms of the settlement and

the amount of their settlement award. Class Counsel expects to respond to more class member inquiries after final approval, especially after checks are issued.

### b. The Issues Involved Were Novel and Difficult and Required the Skill of a Highly Talented Team of Attorneys.

Courts have recognized that wage and hour cases involve complex legal issues. "FLSA claims typically involve complex mixed questions of fact and law… These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

Among FLSA/Wage and Hour cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as an "opt out" class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b). Because the same set of operative facts is being applied and analyzed under both statutory frameworks, justice is served and consistency and efficiency are achieved by having the litigation in one forum. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001).

In this case, there were numerous disputed questions of law and fact, including the interpretation of the FLSA's outside sales exemption, and its application (or lack thereof) to Defendant. As to each of the claims, Plaintiffs' counsel was met with a vigorous defense from Granite and their seasoned and experienced counsel. Granite challenged Plaintiffs on each legal disputing the legal theories and requiring extensive and an unusually high number of hours performing legal research and analysis of the FLSA and corresponding federal regulation on issues including time tracking, automatic

meal break deductions, off the clock work, and numerous asserted exemptions and challenges to the hours claimed to be worked. The settlement covers numerous job titles and also added to the legal challenge to this case. The parties negotiated and debated every aspect of the claims and defenses before reaching the settlement agreed upon.

Given the novel and complex issues outlined above, the attorneys on both sides of the case were required to have an exceptional amount of skill and knowledge in wage and hour law, in order to properly litigate the case on behalf of their clients. *See Walco,* 975 F.Supp. at 1472 (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *see also Camden I,* 946 F.2d at 772 n. 3 (in assessing the quality of representation by Class Counsel, Court also should consider the quality of their opposing counsel.); *Johnson,* 488 F.2d at 718; *Ressler v. Jacobson,* 149 F.R.D. 651, 654 (M.D. Fla. 1992). "The fact that this level of legal talent was available to the Settlement Class is another compelling reason in support of the fee requested... In the private marketplace, as pointed out by several of Plaintiffs' experts, counsel of exceptional skill commands a significant premium." *In re Checking Account Overdraft Litigation,* 830 F.Supp.2d at 1363. So it should be here. *Id.*

c. **The Claims Against Defendant Entailed Considerable Risk.**

Prosecuting these claims was a significant undertaking. The risks involved in this type of case from the Plaintiffs' perspective have been discussed at length above, and elsewhere. "The simple fact is that there were a larger than usual number of ways that Plaintiffs could have lost this case, and they still managed to achieve a successful settlement. A significant amount of the credit for this must be given to Class Counsel's strategy choices, effort and legal acumen." *Id*. at 1363-64, including pressing Defendant to commence with early efforts to engage Defendants in

settlement discussions for all similarly situated persons in the putative class. Certainly there was a risk the Court might not approve class certification or subsequently decertify the class even after years of litigation ensued.

"A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.' " *In re Sunbeam,* 176 F.Supp.2d at 1336. In addition, "[t]he point at which plaintiffs settle with defendants ... is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motors Corp.,* 860 F.2d 250, 258 (7th Cir. 1988), *cert. denied,* 493 U.S. 810 (1989). "Undesirability" and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 112 (3d Cir.1976); *Walco,* 975 F.Supp. at 1473.

Throughout the pendency of the case, Defendant maintained that they were exempt from the FLSA and State Law overtime requirements, that the Plaintiffs would not be able to maintain a class or collective status due to factual differences in the work settings of the individual members of the class. "[G]iven the positive societal benefits to be gained from lawyers' willingness to undertake difficult and risky, yet important, work like this, such decisions must be properly incentivized." *In re Checking Account Overdraft Litigation,* 830 F.Supp.2d at 1364. Respectfully, that the proper incentive here is a 30 % fee.

> d. **Class Counsel Assumed Substantial Risk to Pursue This Action on a Pure Contingency Basis, and Were Precluded From Other Employment as a Result.**

Class Counsel prosecuted this litigation entirely on a contingent fee basis. In undertaking to prosecute this complex action on that basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award. "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam,* 176 F.Supp.2d at 1335 (quoting *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 548 (S.D.Fla.1988), aff'd, 899 F.2d 21 (11th Cir.1990)); *see also In re Continental Ill. Sec. Litig.,* 962 F.2d 566 (7th Cir.1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler,* 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta,* 652 F.Supp. 755, 759 (N.D.Ga.1985), *modified,* 803 F.2d 1135 (11th Cir.); *York v. Alabama State Bd. of Education,* 631 F.Supp. 78, 86 (M.D.Ala. 1986). As Judge King has observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer.... A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens,* 118 F.R.D. at 548. The risks taken by Class Counsel have been discussed. It is uncontroverted that the time spent on this litigation was time that could not be spent on other matters. Thus, this factor too supports the requested fee.

     e.  **The Requested Fee Comports With Customary Fees Awarded in Similar Cases.**

Numerous recent decisions with this Circuit and in similar wage and hours class/collective actions have awarded attorneys' fees up to, and often in excess of, the 30% requested by class counsel here. *See, e.g.*, *Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee... which is one-third (33.33%) of the settlement fund, is awarded from the settlement fund to the plaintiff's Lead Counsel. This amount is fair and reasonable in light of... fee awards in comparable cases.) (Merryday, J.); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("Class Counsel's request for 33 1/3% of the fund is reasonable and 'consistent with the norms of class litigation...' ") (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)); *Hosier v. Mattress Firm, Inc.*, 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. April 18, 2012) (class settlement approved with 33 1/3 of the common fund payable as attorneys' fees); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third of maximum common fund apportioned as attorneys' fees); *Gutter v. E.I. DuPont De Nemours & Co.,* No. 1:95–cv– 02152–ASG, D.E. 626 at 7 (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) because they expended significant time and resources on a purely contingent basis under the common fund theory); *In re Terazosin Hydrochloride Antitrust Litig.,* No. 1:99– md–01317–PAS, Doc. No. 1557 at 8– 10 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent

basis).  Here, Plaintiffs counsel has elected to request less than the 33.33% fee awarded in similar cases, and is not opposed by Defendant or Settlement Class Members.

### f. **The Remaining *Camden I* Factors Also Favor Approving Class Counsel's Fee Request.**

The remaining *Camden I* factors also support Class Counsel's fee request. The burdens of this litigation and the results obtained on behalf of Plaintiff and the Class weigh in favor of the fee requested. The fee request is firmly rooted in "the economics involved in prosecuting a class action." *See In re Sunbeam,* 176 F.Supp.2d at 1333. "[P]roper incentives must be maintained to insure that attorneys of this caliber are available to take on cases of significant public importance like this one." *In re Checking Account Overdraft Litigation,* 830 F.Supp.2d at 1368. The factual record in this case compel this result. Further, as indicated in the Settlement Agreement, Defendant does not oppose a request. Accordingly, an award of attorneys' fees and costs in the amount of 30% of the Gross Settlement Fund is fair, reasonable and appropriate in this case.

## VII.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter the Final Order Approving the Class and Collective Action Settlement, attached as **Exhibit 4** hereto, which, *inter alia*:

i.  approves the Parties' settlement as fair, reasonable and adequate;

ii.  finally certifies the instant proceeding as a class action pursuant to Federal Rule of Civil Procedure 23, and conditionally certify this proceeding collective action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA") for purposes of settlement only;

iii.  approves incentive payments to the Named Plaintiffs, Hair and Witkowski, in the amount of $5,000.00 each;

iv.  approves incentive payments of $2,500.00 each to the Opt-Plaintiffs who submitted opt-in claim forms prior to the Preliminary Approval Order: Nicholas James Eddy; Kathryn Gill; Timothy Gray; Kris Holt; Dorothy Kidari; Vladimir Kolodyazhnyi; Thomas Krumenaker; Cameron McMillan; Tommy Morgado; Todd Nigro; Gary Orr; Jeremy Roberts and Naton Wells;

v.  finally certifies the instant proceeding as a class action pursuant to Federal Rule of Civil Procedure 23, and conditionally certify this proceeding collective action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA") for purposes of settlement only

vi.  awards Class Counsel attorneys' fees and costs in the amount of $214,470.15;

vii.  enters final judgment in accordance with the terms of the Settlement Agreement.


Respectfully submitted this 2nd day of November, 2018.

/s/ Mitchell L. Feldman
Mitchell L. Feldman
E-mail: *mitch@feldmanwilliams.com*
Benjamin Williams
E-mail: *ben@feldmanwilliams.com*
**FELDMAN WILLIAMS, PLLC**
6940 W. Linebaugh Avenue, #101
Tampa, Florida 33626
Tel: (877) 946-8293
Fax: (813) 639-9376

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 2, 2018, a true and correct copy of the foregoing was electronically filed and served via transmission of Notice of Electronic Filing generated by CM/ECF on all counsel or parties of record on the Service List below, and also via any additional manner noted below.


/s/Mitchell L. Feldman
Mitchell L. Feldman

**SERVICE LIST**

**Counsel for Defendant:**

Aaron Reed (Local Counsel)
E-mail: areed@littler.com
Littler Mendelson, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, Florida 33131
Tel: (305) 400-7500
Fax: (305) 603-2552

T. Christopher Donnelly (admitted *pro hac vice*)
E-mail: tcd@dcglaw.com
Joshua N. Ruby (admitted *pro hac vice*)
E-mail: jnr@dcglaw.com
Donnelly, Conroy & Gelhaar, LLP
260 Franklin Street
Suite 1600
Boston, Massachusetts 02110
Tel: (617) 720-2880
Fax: (617) 720-3554